# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| **PACORINI GLOBAL SERVICES** | * | |
| **(USA), LLC (F/K/A PACORINI** | * | **CIVIL ACTION** |
| **LOGISTICS, LLC)** | * | |
|     **Plaintiff** | * | **NO.** |
| | * | |
| **VERSUS** | * | **JUDGE:** |
| | * | |
| **MORAN TOWING CORPORATION** | * | **MAGISTRATE:** |
| **AND GREAT CIRCLE SHIPPING** | * | |
| **CORP.** | * | |
|     **Defendants** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Pacorini Global Services (USA), LLC (formerly known as Pacorini Logistics, LLC) (hereinafter referred to as "Pacorini"), who seeks a judgment from this Honorable Court declaring that Pacorini is not contractually bound by a purported transportation agreement or any other agreement with Moran Towing Corporation (hereinafter referred to as "Moran") and accordingly is not bound to arbitrate an alleged dispute with Moran arising out of any such agreement. Pacorini further seeks injunctive relief enjoining Moran from pursuing arbitration that has already been initiated pursuant to the purported transportation agreement.

Pacorini further alleges that due to Great Circle Shipping Corp.'s (d/b/a Great Circle Shipping Corporation) (hereinafter referred to as "Great Circle") actions, omissions, misrepresentations, intentional concealment of facts, and fraud, including but not limited to: failure to disclose to Pacorini that it was acting as a mandatary and on behalf of Moran; Great

Circle's unauthorized attempt to bind both Moran and Pacorini while Great Circle had actual knowledge that there was no agreement between them on the purported charter party's essential terms; Great Circle's failure to take reasonable steps to eliminate or reduce any contractual obligation(s) purportedly owed by Pacorini; Great Circle's intentional deletion and concealment of key terms in, and its subsequent attempted confirmation of, a charter party agreement containing different or omitted terms relating to freight, demurrage and commission that would unjustly enrich Great Circle at Pacorini's expense; and Great Circle's intentional alteration of and/or concealment of the true terms in a settlement proposal. Pacorini suffered and continues to suffer damages as a result of the actions, omissions, misrepresentations, intentional concealment of facts, and fraud committed by Great Circle.

Upon information and belief, Pacorini alleges as follows:

## PARTIES

1.    Pacorini is a limited liability company organized under the laws of the State of Louisiana with its principal place of business located in New Orleans, Louisiana.

2.    Moran is a corporation incorporated under the laws of the State of New York with its principal place of business located in New Canaan, Connecticut. It is licensed to conduct business in Louisiana as a foreign corporation and it has an agent for service of process in Louisiana.

3.    Great Circle is a corporation organized under the laws of the State of New York with its principal place of business located in Pensacola, Florida.

## JURISDICTION

4.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, a party may institute a suit to obtain a declaratory judgment regarding its rights and other legal relations with

respect to another party.  Further, under 28 U.S.C. § 2202, a party may seek any "further necessary or proper relief based on a declaratory judgment."

5.     The Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, and 28 U.S.C. § 1333 as this is a civil case of admiralty and maritime jurisdiction.  The claims against Moran set forth in this complaint are designated as admiralty and maritime claims under the provisions of Rule 9(h) of the Federal Rules of Civil Procedure.

6.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within this judicial district, namely, the underlying dispute relates to a purported breach of an alleged contract between Pacorini and Moran for the shipment of frac sand from New Orleans, Louisiana to Brownsville, Texas.

7.     On May 8, 2015, Moran filed suit in the United States District Court for the Southern District of New York seeking an order from the Court compelling arbitration, attorney's fees, costs, and disbursements necessitated by the complaint.

## FACTS

8.     In July of 2014, Pacorini began to explore a business opportunity to ship hydraulic fracturing ("frac") sand from New Orleans, Louisiana to Brownsville, Texas.  Prior to reaching any agreement on shipping the frac sand from New Orleans to Brownsville, the suppliers of the frac sand first needed to arrange and confirm shipment of frac sand from its point of origin in the Midwest to New Orleans by river barge.  It was contemplated that once the frac sand arrived in New Orleans, it would be loaded onto an ocean-going barge and shipped to

Brownsville.  The shipment of frac sand via waterway as opposed to land rail was a novel concept.

9.      In the process of conducting feasibility research on the novel idea of shipping frac sand by water, Pacorini needed information concerning, among other things, the availability and cost of loading ocean-going barges in New Orleans, the cost of transporting those barges to Brownsville and the cost of unloading the ocean-going barges in Brownsville.  Pacorini, through Charles Smith, contacted Tom McCulley of Great Circle to determine the availability and rates of suitable ocean-going barges for the potential shipment. This information was necessary in order for Pacorini to evaluate the potential feasibility of the proposed frac sand water transportation idea. This was the first time that Pacorini ever contacted or requested services of Great Circle.  Pacorini requested that Great Circle explore the availability and rates of ocean-going barges. Pacorini never granted Great Circle authority to enter into any binding agreements on its behalf, either with Moran or any other third party.  Nevertheless, at all times relevant hereto, Great Circle was presumed to act solely in the interests of Pacorini, and Great Circle never disclosed to Pacorini that it was acting as a mandatary for and on behalf of Moran or any other third party.

10.     A necessary precondition to entering any binding agreement to ship frac sand via ocean-going barge from New Orleans to Brownsville was a binding contract and commitment from the frac sand supplier(s) that not only guaranteed sufficient quantities of frac sand available for shipment, but also guaranteeing that river barges were available to ship the frac sand from its point of origin in the Midwest to New Orleans.  Pacorini would never have entered into (and specifically disclaims that it ever did) any binding agreement for the shipment of frac sand via ocean-barge prior to and without having enforceable agreements in place with the frac sand

4

supplier(s). Pacorini's need to first secure contracts with the frac sand supplier(s) before any further agreements on transportation was a critical component of this entire business opportunity and Great Circle was fully aware of this critical precondition and component at all times relevant hereto.

11.     On September 19, 2014, Tom McCulley provided Pacorini with some preliminary data regarding ocean-going barge availability for the proposed transportation of the frac sand. That same day, and at Pacorini's specific request, Tom McCulley forwarded a blank, standard form charter party contract. Tom McCulley specifically advised Pacorini in that correspondence that the standard form contract was an example of a charter party agreement used under similar situations.  Recognizing that further negotiations were necessary before any binding agreement could be made, Tom McCulley advised Pacorini that all the terms of the standard form charter party agreement would be discussed, negotiated and agreed to at some point in the future.  This standard form charter party agreement did not identify the name of any vessel owner, identify the cargo type or quantity, identify the loading port, or contain other key and necessary details. Furthermore, Great Circle was presumed to act solely in the interests of Pacorini, and Great Circle never disclosed to Pacorini that it was acting as a mandatary for and on behalf of Moran or any other third party.

12.     Consistent with Tom McCulley's September 19, 2014 correspondence, Pacorini planned to review the form charter party agreement internally and with its legal counsel (as is Pacorini's customary business practice) in order to later negotiate and finalize the terms of a charter party agreement with the vessel owner or other contacting party (whose identity was not yet disclosed).  Pacorini had no intention of entering into a binding and enforceable agreement for the transportation of frac sand to Brownsville before reviewing the proposed charter party

agreement internally and with its legal counsel.  In fact, Pacorini subsequently requested a copy of the standard form charter party agreement in Word format so that it could review and mark it up internally and with legal counsel before beginning negotiations.  Donna Malonee of Great Circle acknowledged this request and emailed a Word copy of the standard form charter party agreement to Pacorini on September 30, 2014.

13.    Between September 18, 2014 and September 23, 2014, Great Circle sent many emails to Pacorini explaining that the freight rate for the ocean-barge was $17.00 per short ton and the daily demurrage rate was $23,000.

14.    On September 25, 2014, Great Circle sent an email to Pacorini that Pacorini understood to outline certain terms that would form the basis for negotiations between Pacorini and an unidentified vessel owner as the other contracting party to any binding agreement. The email again provides an ocean-barge freight rate of $17.00 per short ton and a daily demurrage rate of $23,000.  The email omits numerous key and essential terms necessary to form a binding contract, including but not limited to the following: no identification of the vessel owner or any other party with whom Pacorini would ultimately contract; no reference to Great Circle receiving any commission for its work related to this matter; no reference to any  agreement to arbitrate or application of New York law; no reference or statement that Great Circle is authorized to act on behalf of Pacorini; and no indication that Great Circle is acting as a mandatary for and on behalf of Moran.  Pacorini, through Charles Smith, responded to Great Circle's September 25, 2014 email acknowledging that Great Circle had summarized some of the terms of a potential agreement that, when and if the other contracting party were identified and once Pacorini had secured contracts with the frac sand supplier(s), could serve as the basis to engage in further negotiations in anticipation of concluding a contract.

15.     Pacorini never consented to, agreed to, or entered into any contract, fixture or other binding agreement for the transportation of frac sand with any vessel owner, and Great Circle never had authority to negotiate any contract, fixture, or other binding agreement on its behalf.

16.     In early October of 2014, Pacorini advised Tom McCulley that the potential transportation of frac sand from New Orleans to Brownsville was unnecessary due to the inability of suppliers to transport the frac sand from the Midwest to New Orleans by river barge. This fact could not have surprised Great Circle because it was aware of the novel proposal to ship frac sand via river ocean-barge (as opposed to rail) and that Pacorini's ability to get the frac sand to New Orleans was speculative at best. Furthermore, at all times, Great Circle knew that Pacorini did not intend to bind itself to a contract for the shipment of frac sand from New Orleans to Brownsville until it had commitments and binding agreements with the frac sand suppliers and their river barge carriers.

17.     On November 11, 2014, six weeks after an alleged recap was sent to Pacorini, Great Circle forwarded to Pacorini an "Original Charter Party." Pursuant to Moran's instruction to Great Circle, Great Circle requested that Pacorini review, sign and return the agreement for execution by Moran.  Significantly, the terms of the "Original Charter Party" forwarded by Great Circle contained terms and disclosures that were notably absent from the standard form charter party agreement and the September 25, 2014 email "recap" from Great Circle to Pacorini.  This "Original Charter Party" for the first time disclosed Moran as the name of the owner and for the first time included the payment of a 2.5% commission to Great Circle that was never previously disclosed, discussed, or agreed. The "Original Charter Party" included a freight rate of $17.00 per square ton and a daily demurrage rate of $23,000 that was consistent with the September 25,

7

2014 email "recap" from Great Circle to Pacorini. However, as will be shown later, this information is notably different with what Great Circle conveyed to its other client, Moran.

18.     Between September 25, 2014 and December of 2014, Great Circle misrepresented to Pacorini that it was bound by a purported Charter Party Agreement between Pacorini and Moran and recommended that Pacorini attempt to procure frac sand for shipment from New Orleans to Texas.  Great Circle, on three occasions, advised that the vessel owner agreed to extend laycan dates that were allegedly binding upon Pacorini without any apparent attempt to advise Pacorini of the current location of the vessel or other attempt to determine whether the vessel could even arrive in New Orleans within the laycan dates that were purportedly agreed upon.  In the event it was apparent that the vessel could not arrive within the purportedly agreed upon laycan dates (even if a binding Charter Party Agreement existed, which is denied), there would be no reason for Pacorini to extend any laycan dates as Pacorini could have lawfully cancelled the purported Charter Party without any obligation(s) owed to Moran.  Instead, Great Circle insisted that Pacorini was bound by the purported Charter Party Agreement ensuring that Great Circle would recover its expected commission, as well as the difference in freight and demurrage rates presented to Pacorini and Moran as more fully set forth below. In undertaking all of these actions, Great Circle persisted in failing to disclose to Pacorini that Great Circle was acting in a dual capacity and was acting not only for Pacorini but also for Moran.  Great Circle also failed to disclose that it had a significant financial interest in the agreement and any possible resolution of the situation at hand.

19.     On or about December 1, 2014, Tom McCulley advised Pacorini that the Carolina barge (owned by Moran) was at the Port of New Orleans and ready for loading despite the fact

that Pacorini never entered into any binding contractual agreement with Moran for the transport of the frac sand.

20.     At no time did Pacorini, or anyone authorized to act on behalf of Pacorini, enter into any binding contract with Moran relating to the transportation of frac sand.  Moreover, essential terms of the alleged Charter Party Agreement, including the freight rate, demurrage rate and commission, were never agreed to by the parties.

21.     On February 18, 2015, Moran sent Pacorini a written demand for arbitration. Moran contended in its demand that "[t]he basis of [the] dispute which gives rise to the demand for arbitration is the repudiation of the Charter Party by Pacorini Logistics LLC and failure to pay damages resulting from said cancelation."  Moran contends that it is entitled to arbitration in accordance with Paragraph 31 of an alleged Charter Party Agreement dated September 25, 2014, purportedly entered between Moran Dry Bulk Carrier, a Division of Moran Towing Corporation and Pacorini Logistics, LLC.

22.     Moran forwarded a copy of a Charter Party Agreement dated September 25, 2014 (this version was never previously seen by Pacorini) that was allegedly agreed to by Moran and Pacorini as support for their arbitration demand.  This Charter Party Agreement contains terms markedly different from the terms of the Charter Party Agreement forwarded to Pacorini by Great Circle on November 11, 2014 and contained in Great Circle's September 25, 2014 e-mail. Significantly, the Charter Party Agreement sent directly from Moran in connection with its demand for arbitration contains a freight rate of $16.50 per short ton and a daily demurrage rate of $20,000.  The Charter Party Agreement sent by Great Circle to Pacorini on November 11, 2014 and the terms included in the September 25, 2014 email from Great Circle to Pacorini provide for a freight rate of $17.00 per short ton and a daily demurrage of $23,000.  Neither the

Moran or Great Circle versions of the purported charter party agreement are signed or executed by either party.

23.     On May 8, 2015, Moran filed suit in the United States District Court for the Southern District of New York seeking an order from the Court compelling arbitration, attorney's fees, costs, and disbursements necessitated by the complaint.  In the lawsuit, Moran alleges: "[Moran] and [Pacorini], through the chartering broker, Great Circle Shipping Corporation, reached a meeting of the minds as to the essential terms of the Charter Party."  The only conclusion one can reach from this judicial statement is that, unbeknownst to Pacorini, Great Circle was acting as an undisclosed mandatary for and on behalf of Moran.

24.     Attached as Exhibit B to Moran's Complaint is a September 25, 2014 email from Great Circle to Moran.  That email is referred to as a "fixture." Pacorini had never seen or received this email before it was attached to the Court record by Moran. The September 25, 2014 email "fixture" from Great Circle to Moran is very similar in wording to the email of the same September 25, 2014 date from Great Circle to Pacorini, also referring to itself as a "fixture." However, the email sent from Great Circle to Pacorini suspiciously omits significant terms and details that were surprising included in the email forwarded by Great Circle to Moran.  To wit, Great Circle's email fixture to Moran contains the names of all parties to the purported transportation contract (Moran and Pacorini). Moran is not disclosed in Great Circle's email fixture to Pacorini.  The email fixture to Moran specifies a 2.5% commission payable to Great Circle. This key fact is omitted in the email fixture to Pacorini.  These two items show that Great Circle is being compensated on the basis of the monies received by Moran, clearly evidencing

the fact that Great Circle is acting on its own behalf and on behalf of, and in the interests of, Moran as opposed to Pacorini.

25.     More importantly, however, is the fact that the purported September 25, 2014 email "fixture" between Great Circle and Moran that is attached to Moran's Complaint contains a freight rate of $16.50 per short ton and a daily demurrage rate of $20,000.  The September 25, 2014 email "fixture" allegedly between Great Circle and Pacorini contains a freight rate of $17.00 per short ton and $23,000 daily demurrage rate.   Thus, Great Circle is intentionally purporting to deceive Pacorini and "fix" an agreement between Moran and Pacorini with two different freight and demurrage rates.  Incredibly, Great Circle has been contending since 2014 that there is a valid agreement between Moran and Pacorini while simultaneously attempting to unjustly enrich itself at Pacorini's expense by charging a higher freight and demurrage rate to Pacorini than it is charging to Moran.  All freight is payable directly to Great Circle under the purported charter "fixture" so Great Circle would receive the money first and unjustly enrich itself to the tune of a $9,000 upcharge on the freight and a potential $3,000 upcharge on the daily demurrage. Great Circle's intentional and/or fraudulent concealment of these and other essential elements of the agreement preclude the existence of any binding agreement in this case.

26.     Great Circle never advised Pacorini that it did not enter into a binding charter party agreement because there was no agreement between Pacorini and Moran on the essential terms of freight, demurrage and commission. Instead, Great Circle resorted to pressure tactics to try and induce Pacorini to settle the alleged breach of the charter party agreement with Moran. In fact, Great Circle recommended and attempted to coerce Pacorini to pay Moran a settlement amount based upon the higher $17.00 per short ton freight rate despite the fact that the charter party agreement and the September 25, 2014 email fixture attached by Moran to its lawsuit in

New York contains a lower freight rate of $16.50 per short ton and lower demurrage rate of $20,000 per day.  Great Circle even went so far as to advise Pacorini that it should quickly settle the matter and pay before things get into the hands of attorneys.  Again, Great Circle never disclosed to Pacorini that it was working as a mandatary and representative of Moran, never advised Pacorini that it was not bound by the alleged Charter Party Agreement, and never disclosed that it intentionally provided different freight rates and demurrage rates to Pacorini and Moran that would allow Great Circle to fraudulently enrich itself at Pacorini's expense.

## DECLARATORY JUDGMENT THAT NO
## CONTRACT EXISTS BETWEEN THE PARTIES

27.     Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

28.     There is a real, substantial and justifiable issue in controversy between the parties hereto with respect to whether Pacorini and Moran entered into a contract (*i.e.* a charter party agreement) for the carriage of goods.

29.     A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time.

30.     Pacorini requests that the Court declare that Pacorini is not contractually bound by a purported transportation agreement or any other agreement with Moran dated September 25, 2015, or otherwise.  Pacorini never signed, executed, consented to, or otherwise agreed to any charter party, contract of affreightment, or any other contractual undertaking with Moran, and Pacorini never authorized Great Circle or any other person or entity to enter into or bind Pacorini to any such agreement with Moran.

31.     Even if the factfinder were to conclude that Great Circle possessed authority to bind Pacorini to the alleged Charter Party Agreement or any other transportation agreement, which is denied, no valid agreement exists between Pacorini and Moran because there was no

agreement on the essential terms, including but not limited to the freight rate, demurrage rate and commission rate, of the purported Charter Party Agreement.

32.     Even if the factfinder were to conclude that Great Circle possessed authority to bind Pacorini to the alleged Charter Party Agreement or any other transportation agreement which is denied, any purported contract should be void because of Great Circle and/or Moran's failure to disclose (and obtain Pacorini's consent) that Great Circle was acting on behalf of Moran (and therefore dual principles), Great Circle and/or Moran's intentional or fraudulent concealment of material information relating to the alleged agreement, and other material actions, omissions, misrepresentations, intentional concealment of facts, and fraud committed by Great Circle and/or Moran.

### DECLARATORY JUDGMENT THAT NO AGREEMENT TO ARBITRATE EXISTS

33.     Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

34.     On February 18, 2015, Moran sent Pacorini a written demand for arbitration.  In its demand, Moran explained: "The basis of dispute which gives rise to the demand for arbitration is the repudiation of the Charter Party by Pacorini Logistics LLC and failure to pay damages resulting from said cancelation."  Moran asserted that it is entitled to arbitration in accordance with Paragraph 31 of the previously mentioned Charter Party dated September 25, 2014.

35.     To compel arbitration, there must be an agreement between the parties to submit the dispute at issue to arbitration.  Absent such an agreement, a party may not be compelled to arbitrate a dispute.

36.     No arbitration agreement exists between Pacorini and Moran to arbitrate any disputes, including the claims asserted by Moran in its arbitration demand. No valid contract for

the transportation or carriage of frac sand exists between Pacorini and Moran. Pacorini never signed, executed, consented, or otherwise agreed to any charter party, contract of affreightment, or any other contractual undertaking with Moran. Pcorini never authorized Great Circle or any other person or entity to enter into or bind Pacorini to any such agreement with Moran. Further, there was never any agreement entered into between Pacorini and Moran because there was no agreement on the essential terms, including the freight rate, demurrage rate and commission rate, of the purported Charter Party Agreement.

37.     Pacorini requests a declaratory judgment from this Court that Pacorini has no obligation to arbitrate the claims made by Moran in its arbitration demand.

## INJUNCTIVE RELIEF

38.     Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

39.     Pacorini will suffer immediate and irreparable harm if it is compelled to arbitrate claims it did not agree to arbitrate.

40.     Pacorini has a likelihood of success on the merits in that Pacorini has no obligation to arbitrate the claims made by Moran in its demand for arbitration because there is no contract (and therefore no binding agreement to arbitrate as required under applicable law) between Pacorini and Moran.

41.     Accordingly, Pacorini is entitled to a preliminary injunction enjoining Moran from further proceedings against it in arbitration until this Court has determined whether a binding agreement to arbitrate exists between the parties.

## FRAUD OF GREAT CIRCLE

42.     Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

43.    The following actions, omissions, misrepresentations, and intentional concealment of material facts by Great Circle amount to fraud: its failure to disclose to Pacorini and intentional concealment of the fact that Great Circle was acting on behalf of Moran; its attempted confirmation of a charter party agreement containing different terms relating to freight and demurrage that were intentionally concealed and misrepresented by Great Circle so as to unjustly enrich itself at Pacorini's expense; Great Circle's unauthorized attempt to bind both parties to the purported charter party agreement with actual knowledge by Great Circle that there was no agreement on the purported charter party's essential terms; and Great Circle's effort and attempt to coerce Pacorini to settle the purported dispute with Moran on terms that were different than what it was discussing with Moran and with actual knowledge of its own prior intentional concealment of material facts and fraudulent conduct.

44.    As a result of the aforementioned actions, omissions, misrepresentations, and intentional concealment of facts, Pacorini has suffered and continues to suffer the following damages: (a) economic, compensatory, special, and general damages, including the attorney's fees and costs of defending and responding to the claims asserted by Moran in its demand for arbitration and Complaint, in amounts to be determined at trial; (b) pre-judgment and post-judgment interest at the maximum rate allowable by law; (c) attorney's fees and costs of preparing and filing this Complaint; and (d) all such other and further special and equitable relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## NEGLIGENCE OF GREAT CIRCLE

45.    Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

15

46.     The following actions, omissions and misrepresentations of Great Circle amount to negligence: its failure to disclose to Pacorini and intentional concealment of the fact that Great Circle was acting on behalf of Moran; its attempted confirmation of a charter party agreement containing different terms relating to freight and demurrage that were intentionally concealed and misrepresented by Great Circle so as to unjustly enrich itself at Pacorini's expense; Great Circle's unauthorized attempt to bind both parties to the purported charter party agreement with actual knowledge by Great Circle that there was no agreement on the purported charter party's essential terms; and Great Circle's effort and attempt to coerce Pacorini to settle the purported dispute with Moran on terms that were different than what it was discussing with Moran and with actual knowledge of its own prior intentional concealment of material facts and fraudulent conduct.

47.     As a result of the aforementioned actions, omissions and misrepresentations, Pacorini has suffered and continues to suffer the following damages: (a) economic, compensatory, special, and general damages, including the attorney's fees and costs of defending and responding to the claims asserted by Moran in its demand for arbitration and Complaint, in amounts to be determined at trial; (b) pre-judgment and post-judgment interest at the maximum rate allowable by law; (c) attorney's fees and costs of preparing and filing this Complaint; and (d) all such other and further special and equitable relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## **BREACH OF FIDUCIARY DUTY**

48.     Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

49.     In the event the Court or factfinder determines that Great Circle had the authority to act as mandatary of Pacorini and bind it to the purported Charter Party or any other

16

transportation agreement (which is denied), Great Circle breached its duty of loyalty, good faith and fair dealing owed by a mandatory to its principal.

50.     Great Circle breached its duty of loyalty, good faith and fair dealing due to the following actions, omissions and misrepresentations, including but not limited to: its failure to disclose to Pacorini and intentional concealment of the fact that Great Circle was acting on behalf of Moran; its attempted confirmation of a charter party agreement containing different terms relating to freight and demurrage that were intentionally concealed and misrepresented by Great Circle so as to unjustly enrich itself at Pacorini's expense; Great Circle's unauthorized attempt to bind both parties to the purported charter party agreement with actual knowledge by Great Circle that there was no agreement on the purported charter party's essential terms; Great Circle's effort and attempt to coerce Pacorini to settle the purported dispute with Moran on terms that were different than what it was discussing with Moran and with actual knowledge of its own prior intentional concealment of material facts and fraudulent conduct; and its failure to take reasonable steps to eliminate or reduce any contractual obligation(s) purportedly owed by Pacorini.

51.     As a result of the aforementioned actions, omissions and misrepresentations, Pacorini has suffered and continues to suffer the following damages: (a) economic, compensatory, special, and general damages, including the attorney's fees and costs of defending and responding to the claims asserted by Moran in its demand for arbitration and Complaint, in amounts to be determined at trial; (b) pre-judgment and post-judgment interest at the maximum rate allowable by law; (c) attorney's fees and costs of preparing and filing this Complaint; and (d) all such other and further special and equitable relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

**INDEMNITY**

52.     Pacorini repeats and re-alleges the above allegations as if set forth in full herein.

53.     As a result of the aforementioned acts, omissions, concealments, and other tortious conduct by Great Circle, Pacorini seeks  indemnity from Great Circle for all damages, judgments, attorney's fees, and related costs and expenses incurred in defending against Moran's claims asserted in its demand for arbitration and its federal court complaint, and in the event Pacorini is liable for Moran for any amounts whatsoever (which liability is expressly denied), Pacorini would thereupon be entitled to be fully indemnified for any and all amounts which Pacorini is liable to Moran.

**PRAYER**

**WHEREFORE,** plaintiff, Pacorini Global Services (USA), LLC (formerly known as Pacorini Logistics, LLC), prays that this complaint for declaratory judgment, injunctive relief and damages be deemed good and sufficient; that after just proceedings are had, this Court enter a declaratory judgment that Pacorini Global Services (USA), LLC and Moran Towing Corporation did not enter into a binding contract or agreement for the transportation of frac sand, and that Pacorini Global Services (USA), LLC has no obligation to arbitrate the claims asserted by Moran Towing Corporation in its demand for arbitration; entry of a preliminary injunction enjoining Moran Towing Corporation from further proceedings against Pacorini Global Services (USA), LLC in arbitration; judgment in favor of Pacorini Global Services (USA), LLC and against Great Circle Shipping Corp. for all damages suffered by Pacorini Global Services (USA), LLC together with legal interest and all costs associated with the prosecution of this claim; and for all other relief provided by law and equity to which Pacorini Global Services (USA), LLC is entitled.

18

Dated:         New Orleans, Louisiana
               May 13, 2015

                              Respectfully submitted,


                              /s/ EDWARD T. HAYES
                              **EDWARD T. HAYES, T.A. (LA # 25700)**
                              **ADAM D. WHITWORTH (LA # 34149)**
                              **LEAKE & ANDERSSON, L.L.P.**
                              1100 Poydras Street, Suite 1700
                              New Orleans, Louisiana  70163
                              Telephone: (504) 585-7500
                              Facsimile: (504) 585-7775
                              Email: ehayes@leakeandersson.com
                              Email: awhitworth@leakeandersson.com


                                      AND


                              /s/ I. MATTHEW WILLIAMSON
                              **I. MATTHEW WILLIAMSON (LA #13532)**
                              **MILLER & WILLIAMSON, LLC**
                              1515 Poydras Street, Suite 1300
                              New Orleans, LA 70112
                              Telephone: (504) 525-9800
                              Facsimile: (504) 525-9820
                              Email: matt@miller-llc.com

                              *Attorneys for Pacorini Global Services (USA),*
                              *LLC*

19